# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

KELLY DIXON GRAVES, DERRON )
DIXON, BRANDON DIXON, )
DERRICK WILLIAMS, TIARA )
DIXON, DAMON DIXON, )
DOMONICK DIXON, AND DIJON DIXON )
)
      Plaintiffs, )
)
v. )     Case No.
)
KANSAS CITY, MISSOURI BOARD )
OF POLICE COMMISSIONERS, )
    Serve )
)
    PATRICK MCINERNEY )
    1125 Locust Street )
    Kansas City, Missouri 64106 )
)
    ALVIN BROOKS )
    1125 Locust Street )
    Kansas City, Missouri 64106 )
)
    ANGELA WASSON-HUNT )
    1125 Locust Street )
    Kansas City, Missouri 64106 )
)
    LISA PELOFSKY )
    1125 Locust Street )
    Kansas City, Missouri 64106 )
)
    SYLVESTER "SLY" JAMES, JR. )
    City Hall, 29th floor )
    414 E. 12th Street )
    Kansas City, Missouri 64106 )
)
    and )
)
    MICHAEL TRUE, )
    Kansas City Police Department )
    1125 Locust Street )
    Kansas City, Missouri 64106 )

CASEY JONES )
Kansas City Police Department )
1125 Locust Street )
Kansas City, Missouri 64106 )
)
SHANNON CARREL )
Kansas City Police Department )
1125 Locust Street )
Kansas City, Missouri 64106 )
)
BRYAN SCHINDLER )
Kansas City Police Department )
1125 Locust Street )
Kansas City, Missouri 64106 )
)
KYLE YRIGOLLEN )
Kansas City Police Department )
1125 Locust Street )
Kansas City, Missouri 64106 )
)
POLICE OFFICER DAVID KISSEE )
KCPD SERIAL # 3101 )
1125 Locust Street )
Kansas City, Missouri 64106 )
)
POLICE OFFICER JOHN WILSON )
KCPD SERIAL # 4154 )
1125 Locust Street )
Kansas City, Missouri 64106 )
)
SERGEANT ROMONA ARROYO )
KCPD SERIAL # 3014 )
1125 Locust Street )
Kansas City, Missouri 64106 )
)
SERGEANT CHRISTOPHER SICOLI )
KCPD SERIAL # 3842 )
1125 Locust Street )
Kansas City, Missouri 64106 )
)
CAPTAIN ROBERT MCLEES )
KCPD SERIAL # 3511 )
1125 Locust Street )
Kansas City, Missouri 64106 )

2

| POLICE OFFICER CHRISTOPHER | ) |
| TAYLOR | ) |
| KCPD SERIAL # 5353 | ) |
| 1125 Locust Street | ) |
| Kansas City, Missouri 64106 | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

COME NOW Plaintiffs Kelly Dixon Graves, Derron Dixon, Brandon Dixon, Derrick Williams, Taira Dixon, Damon Dixon, Domonick Dixon, and Dijon Dixon individually and on behalf of, Gilbert Dixon, by and through their attorneys of record Peterson & Associates, P.C., and for their cause of action against the captioned defendants hereby state as follows:

## JURISDICTION

1.     Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, which provide original jurisdiction of this Court in suits authorized by 42 U.S.C. § 1983 to redress the deprivation under the color of state law, statute, ordinance, regulation, custom, or usage of any right, privilege, or immunity secured by the Constitution of the United States, or by any act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

2.     Pursuant to 28 U.S.C. § 1367, Plaintiffs further invoke the supplemental jurisdiction of this Court to hear and decide claims arising under State law. The State law claims asserted herein arise out of a common nucleus of operative facts as the jurisdictional conferring claims.

3.     Plaintiffs' action for damages are authorized by:

    a.     42 U.S.C. § 1983, which provides for redress the deprivation under color of state law, statute, ordinance, regulation, custom, or usage of any right,

3

privilege, or immunity secured by the Constitution of the United States or by any act of Congress providing for equal rights of citizens or all persons within the jurisdiction of the United States;

b.  The laws of the State of Missouri; and

c.  42 U.S.C. § 1988, which authorizes Plaintiffs' application for attorneys' fees and provides that a court may award a reasonable attorneys' fee as part of the costs in any action or proceeding to enforce a provision of 42 U.S.C. § 1983.

4.  Venue is proper under 28 U.S.C. § 1391 (b)(2) in that the events giving rise to the claim asserted herein occurred within the district.

## PARTIES

5.  Plaintiff Kelly Dixon Graves is a resident of the United States of America, residing within the County of DeKalb, the City of Lithonia, and State of Georgia. Kelly Dixon Graves is the natural daughter of Gilbert Dixon and is authorized to bring this action pursuant to Missouri Revised Statute 537.080.

6.  Plaintiff Derron Dixon is a resident of the United States of America, County of St. Louis, City of St. Louis and State of Missouri. Derron Dixon is the natural son of Gilbert Dixon and is authorized to bring this action pursuant to Missouri Revised Statute 537.080.

7.  Plaintiff Brandon Dixon is a resident of the United States of America, County of Johnson, City of Olathe, and State of Kansas. Brandon Dixon is the natural son of Gilbert Dixon and is authorized to bring this action pursuant to Missouri Revised Statute 537.080.

8.  Plaintiff Derrick Williams is a resident of the United States of America, residing within the County of Jackson, the City of Kansas City, and State of Missouri. Derrick Williams

4

is the natural son of Gilbert Dixon and is authorized to bring this action pursuant to Missouri Revised Statute 537.080.

9. Plaintiff Taira Dixon is a resident of the United States of America, residing within the County of DeKalb, the City of Lithonia, and State of Georgia. Taira Dixon is the natural daughter of Gilbert Dixon and is authorized to bring this action pursuant to Missouri Revised Statute §537.080.

10. Plaintiff Damon Dixon is a resident of the United States of America, residing within the County of Jackson, the City of Kansas City, and State of Missouri. Damon Dixon is the natural daughter of Gilbert Dixon and is authorized to bring this action pursuant to Missouri Revised Statute § 537.080.

11. Plaintiff Domonick Dixon is a resident of the United States of America, residing within the County of Jackson, the City of Kansas City, and State of Missouri. Damon Dixon is the natural daughter of Gilbert Dixon and is authorized to bring this action pursuant to Missouri Revised Statute § 537.080.

12. Plaintiff Dijon Dixon is a resident of the United States of America, residing within the County of Jackson, the City of Kansas City, and State of Missouri. Damon Dixon is the natural daughter of Gilbert Dixon and is authorized to bring this action pursuant to Missouri Revised Statute § 537.080.

13. Defendant Kansas City, Missouri Board of Police Commissioners ("the Board") operates the Kansas City, Missouri, Police Department ("KCPD") pursuant to Missouri Revised Statute § 84.010, *et seq.,* and employs Michael True, Casey Jones, Shannon Carrel, Bryan Schindler, Kyle Yrigollen, David Kissee, John Wilson, Romona Arroyo, Christopher Sicoli, Robert McLies, and Christopher Taylor.

5

14.     The Board, via its agents, servants, and/or employees hired, trained, supervised, managed, and controlled members of the KCPD including, but not limited to, Defendants True, Jones, Carrel, Schindler, Yrigollen, Kissee, Wilson, Arroyo, Sicoli, McLies, and Taylor.

15.     Defendant Patrick McInerney is President of the Board and is a proper party to this lawsuit in his official capacity pursuant to 42 U.S.C.A. § 1983.

16.     Defendant Alvin Brooks is Vice President of the Board and is a proper party to this lawsuit in his official capacity pursuant to 42 U.S.C.A. § 1983.

17.     Defendant Angela Wasson-Hunt is treasurer of the Board and is a proper party to this lawsuit in her official capacity pursuant to 42 U.S.C.A. § 1983.

18.     Defendant Lisa Pelofsky is a member of the Board and is a proper party to this lawsuit in her official capacity pursuant to 42 U.S.C.A. § 1983.

19.     Defendant Mayor Sylvester "Sly" James, Jr., is a member of the Board and is a proper party to this lawsuit in his official capacity pursuant to 42 U.S.C.A. § 1983.

20.     At all times referred to herein, Defendant Police Officer John True is and was a police officer employed by, and an agent of, the Kansas City, Missouri, Police Department ("KCPD").

21.     At all times referred to herein, Defendant Police Officer Casey Jones was a police officer employed by, and an agent of, the KCPD.

22.     At all times referred to herein, Defendant Police Officer Shannon Carrel was a police officer employed by, and an agent of, the KCPD.

23.     At all times referred to herein, Defendant Police Officer Bryan Schindler was a police officer employed by, and an agent of, the KCPD.

24.     At all times referred to herein, Defendant Police Officer Kyle Yrigollen was a police officer employed by, and an agent of, the KCPD.

6

25. At all times referred to herein, Defendant Police Officer David Kissee, Serial Number 3101, was a police officer employed by, and an agent of, the KCPD.

26. At all times referred to herein, Defendant Police Officer John Wilson, Serial Number 4154, was a police officer employed by, and an agent of, the KCPD.

27. At all times referred to herein, Defendant Sergeant Romona Arroyo, Serial Number 3014, was a police officer employed by, and an agent of, the KCPD.

28. At all times referred to herein, Defendant Sergeant Christopher Sicoli, Serial Number 3842, was a police officer employed by, and an agent of, the KCPD.

29. At all times referred to herein, Defendant Captain Robert McLies, Serial Number 3511, was a police officer employed by, and an agent of, the KCPD.

30. At all times referred to herein, Defendant Police Officer Christopher Taylor, Serial Number 5353, was a police officer employed by, and an agent of, the KCPD.

## FACTUAL BACKGROUND

31. On October 7, 2009, Gilbert Dixon traveled from his home in Lexington, Missouri, to Kansas City, Missouri, for the purpose of helping his cousin, Larry Butler, with a residential roofing job Mr. Butler had secured.

32. On said date, Gilbert Dixon, after working on the residential roofing job, stayed overnight at Mr. Butler's home near the intersection of 39th and Flora, in Kansas City, Jackson County, Missouri.

33. Upon information and belief, Gilbert Dixon was a veteran of the Vietnam War and, as a consequence of his military service, suffered from Post Traumatic Stress Disorder ("PTSD"). As a symptom of the PTSD, Mr. Dixon had occasional flashback episodes.

7

34.     On October 8, 2009, Gilbert Dixon, while staying at his cousin's home at or near the intersection of 39th and Flora, experienced a flashback episode during which he went into the street, removed his clothes, and began shouting.

35.     At said time and location, Mr. Larry Butler went into the intersection of 39th and Flora and attempted to calm Gilbert Dixon and get him back inside the home.

36.     At said time and location, a neighbor observed Gilbert Dixon in the roadway, clothed only in his underwear and shouting. The neighbor called 911 to report her observation.

37.     At or near 01:50 on October 8, 2009, Kansas City Police Department dispatched Officer Michael True ("Officer True") and Officer Casey Jones ("Officer Jones") on a reported "ambulance en route" call.

38.     At or near 01:50 on October 8, 2009, KCPD Officer Shannon Carrel ("Officer Carrel") heard the dispatch and responded to the intersection 39th and Flora to provide assistance and back-up to Officer True and Officer Jones.

39.     At or near 01:53, dash camera video from KCPD cruiser 4843, which was transporting Officer True and Officer Jones, shows two adult males in the street.

40.     At or near 01:54, Officer Carrel arrived at the intersection of 39th and Flora.

41.     At or near 01:54, Officer Carrel and Officer True approached Gilbert Dixon. Officer True grabbed Gilbert Dixon's right arm. He raised Gilbert Dixon's right arm toward Officer Jones who applied his handcuffs to Gilbert Dixon's right wrist.

42.     Officer True, Officer Jones, and Officer Carrel where able to gain control of Gilbert Dixon's left arm and Officer Jones applied a handcuff to Gilbert Dixon's left arm.

43.     At or near 01:54, Gilbert Dixon, while face down on the pavement began kicking his legs at the knees. Officer Carrel moved down Gilbert Dixon's legs, holding his legs down with her knees and hands. Officer Jones placed his knee on Gilbert Dixon's calf region.

8

44.     At or near 01:55, Officer True kneeled over Gilbert Dixon's upper body and applied pressure to the left side of Gilbert Dixon's head with his knee. Officer True also placed one hand on Gilbert Dixon's back.

45.     At or near 01:55:02, Officer Kyle Yrigollen arrived at the scene of 39th and Flora in KCPD cruiser number 5218.

46.     For a period of approximately twenty-three seconds, from at or near 01:55:02 until at or near 01:55:25, Gilbert Dixon was face down on the pavement with Officer Carrel sitting on his calves. This is visible in video footage shot from a dashboard camera mounted in Officer Yrigollen's police cruiser.

47.     At or near 01:55:05, Gilbert Dixon's legs stopped moving and do not move again at any time while he is face down on the pavement.

48.     At or near 01:55:13, Officer Jones handcuffed Gilbert Dixon's hands behind his back.

49.     At or near 01:55:57, KCPD Officer Taylor arrives at the intersection of 39th and Flora in KCPD cruiser 5354.

50.     Beginning at 01:55:57, Gilbert Dixon was face down on the pavement with his arms behind his back with Officer True standing over him with one hand on Gilbert Dixon's mid-back and one hand on Mr. Dixon's low back.

51.     From at or near 01:55:57 to 01:57:57, Gilbert Dixon attempted to move his left arm.

52.     At or near 01:56:53, KCPD Officer Kissee arrives at 39th and Flora in KCPD cruiser 3101.

53.     At or near 01:57:03 to 01:57:14, Officer Kissee applied leg shackles to Gilbert Dixon. There is no visible resistance to the shackles being applied.

9

54.     At or near 01:57:06, KCPD Sergeant Arroyo arrives at the intersection of 39th and Flora in KCPD cruiser 3104.

55.     At or near 01:57:57, Gilbert Dixon makes the last visible movement of his left arm.

56.     At or near 01:58:08, KCPD Officer Bryan Schindler ("Officer Schindler") arrives at 39th and Flora and approached Gilbert Dixon.

57.     At or near 01:59:09, Officer Carrel asked Gilbert Dixon, "You still breathing?"

58.     At or near 01:59:10, an unidentified male KCPD officer said to the other officers at the scene, "Roll him up on his side."

59.     At or near 01:59:23, an unidentified male KCPD officer on scene said "Breathe for me okay."

60.     At or near 01:59:26, a minimum of four minutes and twenty-eight seconds after being placed face down on the pavement by Officers True, Jones and Carrel, a KCPD officer rolled Gilbert Dixon over and attempted to sit him up.

61.     At or near 01:59:30, Gilbert Dixon's body, as observed on KCPD cruiser 5218 dash camera video, is visibly limp. His head is slumped forward in a flexion position with his chin on his chest.

62.     Upon rolling Gilbert Dixon over to a sitting position, Officer Schindler supported his torso with his leg. Officer Schindler checked Gilbert Dixon's carotid pulse which stated was strong and elevated. Officer Schindler said he could feel Gilbert Dixon breathing and observed his torso expanding with each breath.

63.     At or near 01:59:33, an unidentified male KCPD said to Gilbert Dixon "You're going to suffocate down there; I don't want you to stop breathing on me because that would just be bad."

10

64. At or near 01:59:37, an unidentified female KCPD officer said to others on the scene "That would be real bad."

65. At or near 01:59:39, an unidentified male KCPD officer said to others on scene "Mo bad."

66. Immediately after this exchange regarding Gilbert Dixon suffocating while in police custody, several officers laughed.

67. At or near 02:03:00, Gilbert Dixon was still in a seated position with an unidentified KCPD officer holding him up with his knee. Gilbert Dixon's neck was still in a flexion position with his chin to his chest.

68. At or near 02:03:00, an unidentified KCPD officer said to others on scene, "Yeah, he's breathing . . . he's got a pulse. I'm checking him every couple of minutes".

69. At or near 02:03:45, the leg shackles were removed from Gilbert Dixon.

70. From at or near 01:59:26 until 02:08:09, Gilbert Dixon was in a seated position being supported by an unidentified KCPD police officer with his neck in a flexion position with his chin to his neck. There are no visible movements made by Gilbert Dixon during this eight minute and thirty-three second period of time.

71. At or near 02:08:09, Metropolitan Ambulance Service Trust ("MAST") paramedic Kelly Kearny arrived at the scene and began to attend to Gilbert Dixon. Upon her inspection of Gilbert Dixon, he was non-responsive, his pupils were dilated, and he was non-responsive to verbal stimuli. Ms. Kearny noticed Gilbert Dixon had not taken a breath while she was trying to assess him. Ms. Kearny felt for a carotid artery pulse and found no pulse present. She then called for Kansas City Fire Department for assistance with resuscitation.

11

72.     At or near 02:10:36, several KCPD officers and MAST paramedics lifted Gilbert Dixon on to the MAST gurney. Gilbert Dixon's body was visibly limp, and he made no visible voluntary movement.

73.     At or near 02:11:05, an unidentified male police officer radioed KCPD and said "MAST has requested to have Fire respond Code 1."

74.     At or near 02:11:29, MAST personnel placed Gilbert Dixon onto a long back board atop the gurney. The paramedics, Ms. Kearney and Ms. Cassidy, wheeled Mr. Dixon to the back of the ambulance.

75.     At or near 02:12:45, the gurney carrying Mr. Dixon was placed in the back of the ambulance. Police Officer Schindler and Sergeant Sicoli assisted the MAST personnel in the back of the ambulance until Kansas City Fire Department personnel arrived to perform resuscitation on Mr. Dixon.

76.     At or about 02:18:35, the MAST ambulance left the scene at 39th and Flora en route to St. Luke's Hospital Plaza ("St. Luke's").

77.     Mr. Dixon arrived in the St. Luke's emergency department at approximately 02:40:00. Mr. Dixon presented with a cardiac arrhythmia called pulseless electrical activity (PEA).

78.     Following a brief physical examination and clinical work up, Mr. Dixon was diagnosed with severe hypoxic ischemic encephalopathy.

79.     At or near 13:09, on October 10, 2009, Mr. Dixon was pronounced dead.

80.     On post mortem examination, Mr. Dixon's brain on gross examination was noted to have diffuse cerebral edema with bilateral uncal and cerebellar tonsilar herniation with associated hemorrhagic necrosis secondary to hypoxic ischemic encephalopathy.

12

## COUNT I
## 42 U.S.C. § 1983 AND THE FOURTH AMENDMENT
## EXCESSIVE AND UNREASONABLE FORCE

81.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if set forth herein.

82.     Gilbert Dixon's rights have been violated under the Fourth Amendment of the United States Constitution made applicable to the states via the Fourteenth Amendment pursuant to 42 U.S.C. § 1983, in that he was subjected to excessive and unreasonable force by Defendants Casey Jones, Michael True, Shannon Carrel, Bryan Schindler, David Kissee, and Kyle Yrigollen, who forcibly held Gilbert Dixon face down on the pavement with his hands handcuffed behind his back, a position known to place individuals at risk for positional asphyxia, for a period of at least four minutes and twenty-eight seconds.

83.     Gilbert Dixon's rights have been violated under the Fourth Amendment of the United States Constitution made applicable to the states via the Fourteenth Amendment pursuant to 42 U.S.C. § 1983, in that he was subjected to excessive and unreasonable force by Defendants Casey Jones, Michael True, Shannon Carrel, Bryan Schindler, David Kissee, and Kyle Yrigollen, who forcibly held Gilbert Dixon leaning forward with his head in a flexion position with his chin to his chest, a position known to cause positional asphyxia, for a period of eleven minutes and ten seconds.

84.     The excessive force to which Gilbert Dixon was subjected by Defendants was without authority of law and without any reasonable necessity to use any force, much less the excessive force that they employed.   And the force employed was used without legal justification, without Gilbert Dixon's consent, and with malice and intent to inflict pain and suffering.

13

85. During the forgoing brutality, Gilbert Dixon was unarmed, defenseless, unclothed, and made no moves or gestures to provoke Officers Jones, True, Carrell, Schindler, Kissee, or Yrigollen.

86. As a direct result of Defendants' actions, Gilbert Dixon was deprived of rights, privileges, and immunities under the Fourth Amendment of the United States Constitution, more particularly, plaintiff's right to be free from the use of excessive and unreasonable force.

87. Because of the unlawful use of excessive and unreasonable force, Gilbert Dixon was harmed physically, being subjected to positional asphyxia resulting in cardiac arrest, hypoxic ischemic encephalopathy, bilateral uncal and cerebellar tonsilar herniation, facial contusions, death, and various other harms. Prior to his death Gilbert Dixon lost bodily function, was subjected to physical pain, humiliation, embarrassment, and anxiety.

88. All of the defendant officers who were present and failed to intervene to prevent the excessive and unreasonable force, including: Police Officer Kissee, Police Officer Wilson, Police Officer Taylor, Sergeant Arroyo, Sergeant Sicoli, and Captain McLies, are liable to plaintiffs via their failure to intervene and prevent the preventable harms and violations of Gilbert Dixon's rights committed in their presence.

89. At all times described herein, Defendants were acting in their capacity as officers of the KCPD and were acting in the course and scope of their employment and for the benefit of their employer, the KCPD and the Board.

90. Defendants, without provocation or just cause and with no imminent threat of serious bodily harm or death to themselves or others, assaulted and battered Gilbert Dixon and restrained him in a manner known to pain, suffering, and death.

91. The use of force by the defendant officers against Gilbert Dixon was unreasonable, wholly unnecessary, and unjustified. The defendant officers did not have probable

14

cause or reasonable suspicion to believe that Gilbert Dixon posed any threat of serious physical harm to himself or others.

92.   The defendant officers' actions, all taken under the color of law, were intentional and carried out with willful indifference to Plaintiff's constitutional rights.

93.   The actions described herein were willful, wanton, and malicious and exhibited a reckless indifference and conscious disregard for the safety, well-being, and rights of others justifying an award of punitive damages.

94.   The Kansas City Missouri Board of Police Commissioners (Board of Police Commissioners) is vicariously liable for Defendants' conduct committed during the scope of their employment under the doctrine of respondeat superior.

95.   The defendant officers' actions, performed in the course and scope of their employment and under color of law, resulted in Gilbert Dixon suffering personal injuries and death, as described herein, deprived Plaintiff of his constitutional rights to be free from bodily harm, secure in his person, to be free from unreasonable seizure of his person and property, and to be secure from excessive force, all in violation of his rights under the Fourth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. § 1983.

96.   The defendant officers' actions were willful, wanton, and malicious and exhibited a reckless indifference or conscious disregard to the safety, well-being, and rights of others, justifying an award of punitive damages against Defendants.

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly and severally, in an amount in excess of $75,000.00, for their costs and attorneys fees, for punitive damages, and for such other relief as the Court deems just under the premises.

15

## COUNT II
## VIOLATION OF GILBERT DIXON'S RIGHTS PURSUANT TO 42 U.S.C. § 1983 AND THE FOURTH AMENDMENT BY DEFENDANT KANSAS CITY, MISSOURI BOARD OF POLICE COMMISSIONERS, i.e. MONELL CLAIM

97.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if set forth herein.

98.     Gilbert Dixon's rights have been violated under the Fourth Amendment to the United States Constitution as made applicable to the states via the Fourteenth Amendment by defendant Kansas City, Missouri Board of Police Commissioners ("Board of Police Commissioners").

99.     Defendant Board of Police Commissioners, and Patrick McInerney, Alvin Brooks, Angela Wasson-Hunt, Lisa Pelofsky, and Mayor Sly James, who were supervisors and final decision makers, as a matter of policy and practice, have acted with callous, reckless, and deliberate indifference to Gilbert Dixon's rights under the Constitution and laws of the United States, in that they failed to adequately discipline, sanction, train, retrain, investigate, supervise, and otherwise direct police officers concerning the rights of citizens, thereby causing the defendant officers, sergeants, and captain in this case to engage in the above described misconduct.

100.    Defendant Board of Police Commissioners, and Patrick McInerney, Alvin Brooks, Angela Wasson-Hunt, Lisa Pelofsky, and Mayor Sly James, who were supervisors and final decision makers, as a matter of policy and practice, have acted with callous, reckless, and deliberate indifference failed to properly train, discipline, investigate, sanction, and retain police officers despite their knowledge of the recurring problem of violations of the Constitutional rights of citizens by the use of excessive and unreasonable force and by officers routinely generating false reports to cover up the use of excessive force as well as by the ongoing failure of

16

members of the KCPD to intervene to prevent preventable violations of individuals' rights by other officers, and, in so failing, the Board of Police Commissioners has caused, encouraged, condoned, and allowed the defendants in this case to engage in the aforementioned conduct without fear of consequences for their illegal acts, which did cause the Gilbert Dixon to be subjected to the deprivation of his civil rights.

101. The Defendant Board of Police Commissioners maintains and Internal Affairs Division (IAD) which is purposefully and intentionally ineffective in investigating allegations of excessive force and which exists merely to exonerate officers who in fact have subjected people to excessive force, and various other violations of individual's rights.

102. Because the defendant officers in the instant matter had no fear of internal reprisals for violating individuals' rights, they did in fact violate the rights of Gilbert Dixon in the instant matter and they did compound their violations of his rights by subjecting him to excessive force and in and by failing to intervene to prevent preventable violations of his rights committed in their presence.

103. By reason of the Board of Police Commissioners deliberate indifference to the violations of Gilbert Dixon's civil rights, he was subjected to the unlawful use of excessive force and unreasonable force, Gilbert Dixon was harmed physically, being subjected to positional asphyxia resulting in cardiac arrest, hypoxic ischemic encephalopathy, bilateral uncal and cerebellar tonsilar herniation, facial contusions, death and various other harms. Prior to his death Gilbert Dixon lost bodily function, was subjected to physical pain, humiliation, embarrassment, and anxiety.

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly and severally, in an amount in excess of $75,000.00, for their costs and attorneys fees, for punitive damages, and for such other relief as the Court deems just under the premises.

17

## COUNT III
## VIOLATIONS OF GILBERT DIXON'S
## RIGHTS UNDER MISSOURI LAW: BATTERY

104. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if set forth herein.

105. Defendants True, Jones, Carrell, Schindler, Yrigollen, Kissee, Wilson, Arroyo, Sicoli, McLies, and Taylor, committed a battery on Gilbert Dixon in that their touching of Gilbert Dixon was harmful, nonconsensual, and unjustified, and, in so doing, Defendants violated the laws and Constitution of the State of Missouri and otherwise violated Gilbert Dixon's rights under Missouri law.

106. Because of the battery, Gilbert Dixon was harmed physically, being subjected to positional asphyxia resulting in cardiac arrest, hypoxic ischemic encephalopathy, bilateral uncal and cerebellar tonsilar herniation, facial contusions, death and various other harms. Prior to his death Gilbert Dixon lost bodily function, was subjected to physical pain, humiliation, embarrassment, and anxiety.

107. The Board of Police Commissioners is vicariously liable to Plaintiffs for the individual defendants' common law tort of battery via the principle of respondeat superior and, upon information and belief, the Board of Police Commissioners purchased liability insurance to provide indemnity coverage for such claims.

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly and severally, in an amount in excess of $75,000.00, for their costs and attorneys fees, for punitive damages, and for such other relief as the Court deems just under the premises.

18

## COUNT IV
## VIOLATIONS OF GILBERT DIXON'S
## RIGHTS UNDER MISSOURI LAW: ASSUALT

108.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if set forth herein.

109.    Defendants True, Jones, Carrell, Schindler, Yrigollen, Kissee, Wilson, Arroyo, Sicoli, McLies, and Taylor, committed the tort of assault on Gilbert Dixon by causing him to be in apprehension of imminent, harmful and offensive touching, and, in so doing, Defendants violated the laws and Constitution of the State of Missouri and otherwise violated Gilbert Dixon's rights under Missouri law.

110.    Because of the assault and battery, Gilbert Dixon was harmed physically, being subjected to positional asphyxia resulting in cardiac arrest, hypoxic ischemic encephalopathy, bilateral uncal and cerebellar tonsilar herniation, facial contusions, death and various other harms. Prior to his death Gilbert Dixon lost bodily function, was subjected to physical pain, humiliation, embarrassment, and anxiety.

111.    The Board of Police Commissioners is vicariously liable to Plaintiffs for the individual defendants' common law tort of battery via the principle of respondeat superior and, upon information and belief, the Board of Police Commissioners purchased liability insurance to provide indemnity coverage for such claims.

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly and severally, in an amount in excess of $75,000.00, for their costs and attorneys fees, for punitive damages, and for such other relief as the Court deems just under the premises.

19

## COUNT V
## VIOLATIONS OF GILBERT DIXON'S RIGHTS UNDER
## MISSOURI LAW: NEGLIGENT HIRING AND RETENTION

112.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if set forth herein.

113.    The Board of Police Commissioners, was negligent, careless, reckless, and deliberately indifferent in hiring, retaining, improperly training, and supervising the individual police department employee Defendants in that said Defendants lacked the experience, deportment, ability, and temperament to be employed by the Board of Police Commissioners, in that the Board of Police Commissioners failed to exercise due care and caution in its hiring practices, and in particular, in hiring the individual defendants, employees who lacked the mental capacity, temperament and the ability to function as employees of the KCPD; failing to investigate the above named defendants' backgrounds and in that Defendant Board of Police Commissioners hired and retained as employees of the KCPD individuals who were unqualified in that the individual defendants lacked the maturity, sensibility, intelligence, and self-restraint to be employed when hired to be employees of KCPD and Board of Police Commissioners.

114.    Defendant, Board of Police Commissioners failed to train its employees to control their tempers and exercise the proper deportment and temperament; to use force prudently and only when necessary, and to otherwise act as reasonably prudent police officers; and in that the defendant Board of Police Commissioners failed to give its employees proper instruction as to their deportment, behavior, and conduct as representatives of their employer; and in that the defendant Board of Police Commissioners, its agents, servants, and employees were otherwise reckless, careless, deliberately indifferent, and negligent.

115.    Defendant Board of Police Commissioners hired and retained as employees violent persons with a propensity for violence.

20

116.    The aforesaid occurrence and resulting injuries to Gilbert Dixon's mind, body and pecuniary harms resulting there from, were caused wholly and solely by reason of the negligence of the defendant Board of Police Commissioners, its agents, servants, and employees without any negligence on the part of Gilbert Dixon.

117.    That by reason of the negligence of the Board of Police Commissioners, Gilbert Dixon was subject to the unlawful use of excessive and unreasonable force, a battery, an assault, Gilbert Dixon was harmed physically, being subjected to positional asphyxia resulting in cardiac arrest, hypoxic ischemic encephalopathy, bilateral uncal and cerebellar tonsilar herniation, facial contusions, death and various other harms.  Prior to his death Gilbert Dixon lost bodily function, was subjected to physical pain, humiliation, embarrassment, and anxiety.

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly and severally, in an amount in excess of $75,000.00, for their costs and attorneys fees, for punitive damages, and for such other relief as the Court deems just under the premises.

## COUNT VI
## WRONGFUL DEATH PURSUANT TO MO. REV. STATUTE § 537.080

118.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if set forth herein.

119.    The acts of Defendants, jointly and severally, as described above, caused the wrongful death of Gilbert Dixon.

120.    As a result of Gilbert Dixon's death, Plaintiffs have suffered pecuniary loss of expenses related to Gilbert Dixon's medical treatment, funeral, and loss of services, consortium, companionship, comfort, instruction, guidance, counsel, training and support.

WHEREFORE, Plaintiffs pray for judgment against Defendants, jointly and severally, in an amount in excess of $75,000.00, for their costs and attorneys fees, for punitive

damages, for all damages recoverable pursuant to Missouri Revised Statute § 537.090 and for such other relief as the Court deems just under the premises.

## DEMAND FOR JURY TRIAL

121.    Plaintiffs hereby demand trial by jury on all Counts and claims in this action.

Respectfully Submitted,

**PETERSON & ASSOCIATES, P.C.**

/s/ L. Benjamin Mook

| | |
|---|---|
| David M. Peterson | #32229 |
| L. Benjamin Mook | #49821 |
| Brett A. Williams | #49768 |

801 W. 47th Street, Suite 107
Kansas City, Missouri 64112
(816) 531-4440
(816) 531-0660 (Facsimile)
lbm@petersonlawfirm.com

**ATTORNEYS FOR PLAINTIFF**

Z:\Active Cases\Williams, Derrick obo Gilbert Dixon\PLEADINGS\complaint-final.docx